IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>   v.<br><br>ENTERPRISE TRUST COMPANY,<br>JOHN H. LOHMEIER, and<br>REBECCA A.TOWNSEND,<br>        Defendants. | No. 08 CV 1260<br><br>Judge James B. Zagel |

### RECEIVER'S MOTION FOR APPROVAL AND PAYMENT OF FEES

Phillip L. Stern, as Receiver ("Stern" or "Receiver") for Enterprise Trust Company ("Enterprise" or the "Company"), moves this Court, pursuant to the Order Appointing Receiver Over Enterprise Trust Company dated March 5, 2008 (the "Order"), for an order approving payment of the Receiver's fees incurred for the month of March 2008 that were in excess of $100,00, to wit, $32,874.50 as well as fees and expenses incurred by Navigant Consulting Company for the month of March 2008 in the total amount of $131,024.

With respect to the fees and expenses incurred by the Receiver, the Order provides that "the Receiver . . . [is] entitled to reasonable compensation from the assets now held by or in the possession or control of or which may be received by Receiver; said amounts of compensation shall be commensurate with their duties and obligations under the circumstances, subject to the approval of the Court; provided, however, that the Receiver may not receive compensation exceeding $100,000 during the initial 28 day appointment without the prior approval of the Court." The Receiver's fees are provided at a discounted rate and capped at an hourly rate not to exceed $475 per hour. The Receiver's fees, excluding expenses, for the month of March 2008, at

the discounted rate, totaled $171,076.00.[1]  The Receiver unilaterally reduced the fees further to $132,874.50.  A copy of the Receiver's discounted bill is attached as Exhibit A.

The significant time spent by the Receiver and legal counsel in the first 28 days was necessitated by the problems encountered with the records maintained by Enterprise, the lack of meaningful cooperation received from certain employees and or officers of Enterprise during this time period, the need to locate and secure Enterprise's and its customers' assets, responding to and providing information to various government agencies that are investigating Enterprise, responding to over 200 customers or their representatives, and the desire to determine as quickly as possible how best to resolve the significant accounting issues that need to be overcome in order to develop a plan for the allocation of assets.  During initial 28 days, not only was the Receiver able to secure cash and securities in excess of $33 million and identify private equity interests maintained by Enterprise (which have not yet been appraised), but the orderly liquidations that were conducted, at the Receiver's direction, of the open securities positions at Interactive Brokers resulted in savings based on market conditions of an amount in excess of $500,000.  Nevertheless, recognizing the extreme hardship Enterprise customers have suffered by reason on the activities that gave rise to the appointment of a receiver, the Receiver discounted his fees by an additional $26,853.42 (15%).

With respect to the fees and expenses incurred by Navigant for the month of March 2008 in the total amount of $131,024, significant work was and will be required by Navigant over the next several months to unravel the accounted mess presented by Enterprise's books and records.  Navigant commenced work on March 10, 2008.  To date, Navigant has been instructed to (1) acquire, preserve and search relevant electronic evidence, such as intra-company e-mails from

---

[1] As detailed in the attached bill (Exhibit A), the total discounted fees and expenses were $144,222.58, which included $11,348.08 in expenses.  The expenses largely reflect the costs associated with the bulk copying of files needed for review by the accountants and legal counsel involved in the Receivership as well as the copying of records requested by government agencies.

the principals of Enterprise, customer trust accounting records tracked on the SunGard accounting system maintained at Enterprise; (2) conduct an accounting of all customer assets, contributions, and withdrawals; (3) assist in developing an equitable plan for consideration by the Court for the allocation of remaining assets; and (4) responding to special data and analytical requests from the Receiver and government agencies investigating Enterprise.

Significantly, Navigant has commenced work on the accounting of all customer funds and securities, which includes over 380,000 transactions since inception. Navigant is currently working on validating the contributions made by customers over time. Within the SunGard accounting system, there are approximately 1,250 accounts that have over 12,000 separate cash or in-kind contributions. As of April 4, 2008, Navigant had conducted the testing of the contributions made into approximately 450 accounts. Navigant anticipates completing its review of the (incomplete) evidence contained in the Enterprise customer files by the end of April 2008. Based on the documentation reviewed to date, alternative procedures (such as requests for customer records) may be required in order to fully validate all contributions due to missing and incomplete documentation and inconsistent standards for data entry that appear to have been historically employed at Enterprise. Navigant has also commenced reconciling current holdings as listed within SunGard accounting system to third party statements (i.e., bank statements, stock certificates, real estate deeds, and trading accounts). Navigant has noted numerous accounting errors that will need to be corrected before any customer distributions are possible.

Navigant also assisted the Receiver by taking custody of 5 hard drives from Enterprise's Oakbrook, Illinois office, forensically imaging the hard drives of certain Enterprise employees and officers, and forensically imaging the file and domain servers. Navigant has used these images to locate requested documentation on behalf of the Receiver, which included providing

the Receiver with over 33,000 de-duplicated emails from e-mail accounts used to manage enterprise. The de-duplication process will allow for a significantly more cost-efficient review of the e-mails by the Receiver and other agencies investigating Enterprise. Navigant has also provided the Receiver and the SEC with various reports and analyses from information extracted from the SunGard accounting system. Such requests have included but are not limited to providing holdings reports by Customer and by CUSIP, check register information, analysis of fees charged to each customer account, customer background information, and information to address individual account holder questions and concerns.

By: /s/ Michael Z. Gurland
Counsel to the Receiver Phillip L. Stern

Christopher M. Burky, Esq.
Samuel S. Cohen, Esq.
Michael Z. Gurland, Esq.
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 2200
Chicago, IL 60602-3801
(312) 269-8000
(312) 269-1747