IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,  )<br>    )<br>Plaintiff,   )<br>    )   Case No. 08-CV-1260<br>v.   )<br>    )<br>ENTERPRISE TRUST COMPANY, JOHN H.   )   Judge James B. Zagel<br>LOHMEIER, and REBECCA A. TOWNSEND,   )<br>    )<br>Defendant.   ) | |

### CERTAIN INVESTORS' OBJECTION TO
### RECEIVER'S PLAN FOR ALLOCATION OF THE ASSETS OF
### ENTERPRISE TRUST COMPANY

Certain Investors[1] in Enterprise Trust Company ("Enterprise") object to the Receiver's Plan for Allocation of the Assets of Enterprise Trust Company ("Allocation Plan" or "Plan").

First, the Receiver's proposed allocation of Enterprise's assets violates the fundamental principle that distribution of receivership assets should be accomplished equitably and fairly, with similarly situated investors treated alike. *S.E.C. v. Credit Bancorp Ltd.*, 2000 WL 1752979 at *13 (S.D.N.Y. 2000). The Allocation Plan suggests that this Court should adopt a distribution plan that discriminates among a group of victimized investors. Adopting such a plan would represent a radical departure from long established legal principles that mandate equal treatment of fraud victims. *U.S. v. Real Property Located at 13328 and 13324 State Highway North*, 89 F.3d 551, 554 (9th Cir. 1996); *S.E.C. v. Elliott*, 953 F.2d 1560, 1570 (11th

---

[1] Schopf & Weiss LLP represents the following investors: Darrell Lohmeier, Helen Lohmeier, Daniel Townsend, Fredrick P. Heiss, William Dieker, Norma Dieker, Richard Kirschman, Denise Kirschman, Kimberly Campise, Earl Colwell, Corey Crowell, Joseph Feldman, Deborah Feldman, James Gove, Aleta Lynn, Carma Rukujzo, John Seales, Thomas McGrew, Michael Schields, Adel Greco, James Burke, Mary Dragel, Patricia Gleich, Daniel Toal, James Gibson, Patricia Kujawa, and Elizabeth Arni (collectively "Certain Investors" or "Investors").

184258

Cir. 1992). The Allocation Plan seeks to punish Certain Investors by distributing to them a smaller percentage. There is no reason for unfairly penalizing the Certain Investors so that they bear an even greater percentage of Enterprise's losses. On this basis alone, the Court should reject the Allocation Plan.

Second, the Investors object to the Allocation Plan because it violates fundamental principles of distribution methodology. There are two generally supported methods for distributing receivership assets: (1) *pro rata* distribution, which is the most equitable method and is favored by most courts; and (2) traced asset calculation which should be applied only when assets can be linked directly to a claimant. The Receiver's Plan fails to adopt either method. Instead, the Allocation Plan assigns randomly selected percentages (65%, 55% and 25%) to determine the distribution to investors. The Court should not approve an Allocation Plan that is not based on either of the generally supported distribution methodologies.

Third, the Investors object to the Allocation Plan's proposal to deduct the value of the illiquid assets from any cash distribution. There are essentially two distinct asset classes that make up the proceeds available for distribution – cash and illiquid investments. Each class of assets should be treated differently when they are distributed to ensure that there is an equitable allocation of all assets. Certain Investors agree with the Receiver's decision to distribute the illiquid assets in kind, but object to any reduction from the cash distribution.

Fourth, the Investors object to the Receiver's request to withhold $1 million from Enterprise's assets to pay future legal fees. The Investors believe that such a large amount is unreasonable especially in light of the absence of a specific plan and budget relating to the completion of any remaining tasks.

This Court should reject the Allocation Plan because it unfairly discriminates among the victims and does not rely on generally accepted distribution methodologies. Instead, the Court should adopt an allocation plan that provides for a *pro rata* distribution of the liquid assets and an in-kind distribution of the illiquid investments without any reduction.

### **FACTS**

Certain Investors, who held accounts that Enterprise actively managed, learned of the Receiver's Allocation Plan on July 25, 2008. The Certain Investors were victimized by Enterprise's alleged fraud, no different than Enterprise's other account holders. Allocation Plan at 1-2. Enterprise was responsible for all investment decisions and trading carried out on behalf of all Enterprise investors. *Id*. at 3. Investors in Enterprise's managed accounts did not have control over Enterprise's investment decisions. *See id*.

Enterprise's client contributions totaled approximately $103.2 million since its inception. *Id*. at 21. The Allocation Plan proposes to distribute Enterprise's remaining assets by applying randomly selected percentages (65%, 55% and 25%) to determine allocation to investors. *Id*. at 22-24. The Receiver has proposed that Certain Investors receive only 25% of their net contribution, while other investors receive more. *Id*. at 24.

There are essentially two distinct asset classes that make up the proceeds available for distribution – cash and illiquid investments. *Id*. at 24. One asset class consists of $30.4 million in cash and liquid securities that Enterprise commingled in nearly 1200 accounts held in Enterprise's name. *Id*. at 21. The Receiver does not know the particular sources of the liquid assets, because of Enterprise's poor document controls. *Id*. at 4.

The second asset class consists of identifiable illiquid fixed income products such as private bank stock and real estate interests that have not been commingled, and are owned by

3

particular investors. *Id*. at 2. These illiquid assets are not easily marketable and cannot be liquidated without losing considerable value. *Id*. at 24. The Receiver proposes returning these non-liquid holdings in-kind to the respective purchasers or holders. *Id*. The Receiver has valued these illiquid assets at $13.8 million, but the Allocation Plan does not explain how that value was determined. *Id*. The Receiver proposes to deduct the value of these illiquid assets from any cash distribution, even though the assets do not have a marketable value. *Id*. at 24.

## **STANDARD OF REVIEW IS *DE NOVO***

A receiver acts like a master when it accepts or rejects claims of objecting parties. *U.S. v. Fairway Cap. Corp.*, 433 F. Supp. 2d 226, 231 (D.R.I. 2006); *U.S. v. Moneta Cap. Corp.*, 441 F. Supp. 2d 398, 402 (D.R.I. 2006); 3 Ralph Ewing Clark, *Clark on Receivers* § 650, 657 (3d ed. 1959); Fed.R.Civ.P. 53(f)(1), (3)-(4). The court should review all objections *de novo* to findings of fact and conclusions of law made or recommended by the receiver before ruling on its recommendations. *Id.*, citing Rule 53(f).

## **ARGUMENT**

This Court should reject the Allocation Plan because it improperly discriminates among victims and violates the established legal principle that "equality is equity." The Investors object to the Allocation Plan because it does not use either of the generally accepted methods for distributing receivership assets. The Investors also disagree with the Allocation Plan's proposal to deduct the in-kind distribution of illiquid investments from the distribution of cash. This Court should also reject the Receiver's proposal to withhold approximately $1 million from Enterprise's assets to pay future legal fees.

I. **THE ALLOCATION PLAN DOES NOT EQUITABLY AND FAIRLY DISTRIBUTE ENTERPRISE'S ASSETS.**

Each of Enterprise's Investors should be treated equally in regards to recovering their lost investments. Distribution of receivership assets should be accomplished equitably and fairly, with similarly situated investors treated alike. *S.E.C. v. Credit Bancorp Ltd.*, 2000 WL 1752979 at *13 (S.D.N.Y. 2000). Equity demands equal treatment of fraud victims in factually similar cases. *U.S. v. Real Property Located at 13328 and 13324 State Highway North*, 89 F.3d 551, 554 (9th Cir. 1996). Because investors generally occupy the same legal position as other investors, equity should not allow one investor preference over any other investor because "equality is equity." *See S.E.C. v. Elliott*, 953 F.2d 1560, 1570 (11th Cir. 1992).

Certain Investors were not involved with, and had no knowledge of, the alleged fraud. These investors should not bear an even greater loss merely because Enterprise actively managed their accounts. All of Enterprise's clients are similarly situated and should be treated alike – regardless if they invested in custodial accounts or managed accounts. Certain Investors are victims of the alleged fraud, no different than Enterprise's other investors. The investors should, therefore be treated similarly. The Court should not approve an allocation plan that allows certain investors to elevate their position over other investors that were similarly victimized.

There is no justification for Certain Investors to receive only 25% of their net contributions when other investors would receive far more. The Receiver's decision to allocate particular percentages to each group of Enterprise's investors is arbitrary. The Receiver provides no reasoning why Certain Investors would only receive 25% of their net contribution, while other investors would receive up to 65% of their net contribution. The Receiver provides no justification for how he determined the specific percentages that each group of investors would

5

receive. The Allocation Plan also does not include an analysis regarding how the percentages were developed nor the factors considered in determining what the percentages were based upon. This Court should not condone such an arbitrary method for determining the distribution of almost $45 million.

## II.   THE COURT SHOULD ADOPT A *PRO RATA* DISTRIBUTION METHOD FOR THE LIQUID ASSETS.

The two generally supported methods for distributing receivership assets are (1) *pro rata* distribution and (2) the traced asset calculation. Most courts favor using the *pro rata* distribution method where the court liquidates all receivership assets and distributes the resulting cash to claimants based on the amount of the initial investments. *See S.E.C. v. Credit Bancorp*, 290 F.3d 80, 85-86 (2nd Cir. 2002); *Elliott,* 953 F.2d at 1569-70 (*pro rata* distribution plan approved); *S.E.C. v. Forex Asset Mgmt LLC,* 242 F.3d 325, 331-32 (5th Cir. 2001) (*pro rata* distribution plan adopted). The *pro rata* distribution of assets is favored in receivership cases, such as this one, where victims' assets were commingled. *Id.* at 88-89. The traced asset option is generally disfavored because it permits one claimant to recover at the expense of another. *S.E.C. v. Credit Bancorp Ltd*., 194 F.R.D. 457, 464 (S.D.N.Y. 2000).

Certain Investors propose that this Court adopt the *pro rata* distribution method for distributing Enterprise's liquid assets. Enterprise had numerous client-investors, whose funds were commingled, in nearly twelve hundred separate accounts. The Receiver also readily admits that because of document control deficiencies, it would be expensive and impracticable to trace funds to specific investors.

Enterprise's victims are similarly situated in that they did not participate in the alleged fraud. The Receiver fails to differentiate between investors who held managed accounts and those who held custodial accounts – because there is no difference. Both groups of investors

placed their trust and finances with Defendants. Both groups of investors have been harmed as a result of the alleged fraud. Both groups will undoubtedly recover far less than their net contribution. Saddling the Certain Investors with an even greater percentage of Enterprises' losses is patently unfair.

The Receiver attempts to paint the custodial account holders as greater victims of the alleged fraud to justify giving them a larger percentage of the assets, which is considerably more than the Certain Investors are scheduled to receive. Those assumptions, however, are unsupported by the law and unsubstantiated by the facts. There are no "greater" victims of fraud. Each of Enterprise's investors lost substantial sums of money.

Investors in Enterprise's managed accounts did not participate in the investment decision making. Any suggestion that the managed account holders "benefited" from the alleged fraudulent activity is ridiculous. There are also no allegations that the managed account holders were complicit – or even aware – of Enterprise's alleged misdeeds. Certain Investors, who were each managed account holders, were victimized no different that the custodial account holders. Certain Investors, like all the other investors, relied upon Enterprise to secure their money and to make sound investment decisions. This Court should reject the Receiver's Allocation Plan and instead formulate a plan that distributes Enterprise's $30.4 million in liquid assets *pro rata*.

### III. THE ALLOCATION PLAN IMPROPERLY DEDUCTS THE ILLIQUID INVESTMENSTS FROM THE CASH DISTRIBUTION.

Enterprise's non-liquid assets make up a separate asset class that is distinct from its liquid assets. The distribution of non-liquid assets should therefore remain separate from the distribution of liquid assets. Certain Investors own or hold a considerable sum in non-liquid assets that should be returned in-kind to their respective owners, without being deducted from the *pro rata* distribution of liquid assets. The Receiver admits that these non-liquid assets are

7

readily identifiable and have not been commingled with other assets. *See* Allocation Plan at 24. The Receiver also agrees that the non-liquid assets are not easily marketable and cannot be liquidated without losing considerable value. *Id*. Yet, the Allocation Plan proposes to assign a value to these investments.[2] The Receiver, however, does not explain what factors were considered in determining the "value" of these illiquid assets. The Receiver then proposes to deduct the "value" of these investments from the cash distribution. Certain Investors who own these non-liquid assets should recover these holdings without reducing their percentage allocation of Enterprise's liquid assets.

      Enterprise's non-liquid assets, such as real estate and bank stocks, valued at approximately $13.8 million, should be returned in-kind to their respective owners without operating as a deduction from the *pro rata* distribution of liquid assets.

**IV.     THE COURT SHOULD REJECT THE RECEIVER'S REQUEST TO HOLD BACK $1 MILLION.**

      Certain Investors believe that the Receiver's request to withhold $1 million from Enterprise's assets to pay future legal fees is unreasonable. The Investors believe that such a large amount is unreasonable especially in light of the absence of a specific plan and budget relating to the completion of any remaining tasks.

## **CONCLUSION**

      For the foregoing reasons, Certain Investors respectfully request that the Court reject the Receiver's Proposed Plan for the Allocation of the Assets of Enterprise Trust Company. Instead, Certain Investors request that the Court formulate a plan that: (1) distributes Enterprise's $30.4 million in liquid assets *pro rata;* and (2) distributes Enterprise's non-liquid assets, such as real estate and bank stocks, that the Receiver valued at approximately $13.8

---

[2] Certain Investors reserve the right to separately object to any valuation of the illiquid investments in the event the Court decides to permit a deduction of these investments from the cash distribution.

million, in-kind to their respective owners without operating as a deduction from the *pro rata* distribution of liquid assets.  This Court should also reject the Receiver's proposal to withhold approximately $1 million from the receivership assets to pay future legal fees.  Certain Investors also respectfully requests this Court grant any such further relief that justice may require.

Dated:  August 22, 2008                          Respectfully submitted,

/s/ Nicholas A. Gowen
One of the attorneys for Darrell Lohmeier, Helen Lohmeier, Daniel Townsend, Fredrick P. Heiss, William Dieker, Norma Dieker, Richard Kirschman, Denise Kirschman, Kimberly Campise, Earl Colwell, Corey Crowell, Joseph Feldman, Deborah Feldman, James Gove, Aleta Lynn, Carma Rukujzo, John Seales, Thomas McGrew, Michael Schields, Adel Greco, James Burke, Mary Dragel, Patricia Gleich, Daniel Toal, James Gibson, Patricia Kujawa, and Elizabeth Arni

Jose A. Lopez
Nicholas A. Gowen
SCHOPF & WEISS LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois  60606
Phone: 312.701.9300
lopez@sw.com
gowen@sw.com

## **CERTIFICATE OF SERVICE**

I, Nicholas A. Gowen, an attorney, certify that the foregoing **Certain Investors' Objection to Receiver's Plan for Allocation of the Assets of Enterprise Trust Company** was filed electronically with the Clerk of the Court using the CM/ECF system on this 22nd day of August, 2008, which will automatically send email notifications of such filing to the following:

Michael Z. Gurland
Christopher M. Burky
Samuel S. Cohen
NEAL, GERBER, EISENBERG LLP
Two North LaSalle Street, Suite 2200
Chicago, IL 60602-3801
**(by ECF notification and Hand Delivery)**

Steven J. Levine
levines@sec.gov

Steven L. Klawans
klawansse@sec.gov

Allison M. Fakhoury
fakhoury@sec.gov

Pravin Rao
prao@perkinscoie.com

Amy Lum
alum@perkingscoie.com

Patrick William Blegen
pblegen@blegenlaw.com

John J. Conway
johnconway@shlawfirm.com

Matthew P. Barrette
mattbarrette@shlawfirm.com

/s/ Nicholas A. Gowen
One of the attorneys for Darrell Lohmeier, Helen Lohmeier, Daniel Townsend, Fredrick P. Heiss, William Dieker, Norma Dieker, Richard Kirschman, Denise Kirschman, Kimberly Campise, Earl Colwell, Corey Crowell, Joseph Feldman, Deborah Feldman, James Gove, Aleta Lynn, Carma Rukujzo, John Seales, Thomas McGrew, Michael Schields, Adel Greco, James Burke, Mary Dragel, Patricia Gleich, Daniel Toal, James Gibson, Patricia Kujawa, and Elizabeth Arni