IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Securities and Exchange Commission, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 08 CV 1260 |
| Enterprise Trust Company, John H. Lohmeier and Rebecca A. Townsend, | ) Judge James B. Zagel ) ) |
| Defendants. | ) |

## MOTION TO INTERVENE

Nonparty movants Edward R. Hayes ("Edward") and Anna Hayes ("Anna") (collectively "Hayes"), by one of their attorneys, Andrew N. Plasz of Crowley Barrett & Karaba, Ltd. and pursuant to Federal Rule of Civil Procedure 24, states as follows for their motion to intervene:

### Introduction

1.  This is a motion to intervene in an SEC receivership action. This motion to intervene is necessary because the procedure established by the Receiver for entertaining objections to the proposed plan of distribution excludes any objections to the methodology of the proposed plan. As a result, Edward and Anna have no choice but to seek leave to intervene.

### Background

2.  Edward & Anna hold two accounts with Enterprise Trust Company ("Enterprise"), accounts nos. 6228 and 7003.

3.  Edward also holds an individual account with Enterprise, account no. 7181.

4.  The Securities and Exchange Commission filed this action against Enterprise and the individual defendants on March 3, 2008.

5. On March 5, 2008 this Court appointed Phillip L. Stern, Esq. of Neal, Gerber & Eisenberg, LLP as Receiver for the assets of Enterprise ("Receiver").

6. The Receiver subsequently proposed a plan for the allocation of the assets of Enterprise ("Proposed Plan").

7. The Proposed Plan is unfair to Edward and Anna for several reasons.

8. First, the Proposed Plan thus violates Edward and Anna's due process rights. While the Receiver has established a process for entertaining objections to the Proposed Plan, the Receiver is refusing to entertain any objections to the distribution methodology. "Summary proceedings are inappropriate when parties would be deprived of a full and fair opportunity to present their claims and defenses." *S.E.C. v. Elliott*, 953 F.2d 1560, 1567 (11th Cir. 1992). Moreover, the Proposed Plan does not give Edward and Anna any opportunity to take discovery. *Cf., Elliott*, 953 F.2d at 1567.

9. Second, the Proposed Plan proposes that Edward will receive only 65% of the value of certain securities held by Enterprise that were held in certificated form (account no. 7181). Securities held in certificated form are completely traceable. Edward should not be required to accepted a 35% "discount" to the value of these securities. Giving Edward less than 100% of the value of his certificated securities represents nothing less than "robbing Peter to pay Paul."

10. Third, the Receiver's Proposed Plan divides the account holders of Enterprise into several classes. Depending on what class an account falls into, the account holder may recover as much as 65% of the value of his account or as little as 25% of the value of his account.

11. The plan of distribution is unusual. General a *pro rata* distribution is favored.

12. Under the proposed plan, Edward and Anna will receive only 25% of the value of their accounts (accounts nos. 6228 and 7003). This is far less than their pro-rata share.

13. Edward and Anna had no involvement in the alleged fraud.

14. Thus, it is necessary that Edward and Anna be permitted to intervene in this action in order that their objections may be heard.

15. Because the Proposed Plan is unfair to Edward and Anna, Edward and Anna seek leave to intervene and to file an Objection to the Proposed Plan. Copies of Edward and Anna's proposed Objection to the Proposed Plan are attached hereto as **Exhibit A**.

16. Federal Rule of Civil Procedure 24 provides, in relevant part, as follows:

> (a) **Intervention of Right.** On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
> (b) **Permissive Intervention.**
> (1) **In General.** On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene by a federal statute; or
> (B) has a claim or defense that shares with the main action a common question of law or fact.
>
> * * *
>
> (3) **Delay or Prejudice.** In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. F.R.C.P. 24 (a), (b)(1, 3).

**Edward and Anna Have a Right to Intervene Pursuant to F.R.C.P. 24(a)**

17. A motion to intervene as of right "should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 323 (7th Cir. 1995).

18.     Edward and Anna's motion to intervene is timely. The Proposed Plan was filed on July 21, 2008. Upon realizing the negative impact of the Proposed Plan on their holdings, Edward and Anna moved quickly to retain counsel and move to intervene in this action.

19.     Edward and Anna have a interest in property that is the subject of this action. Edward and Anna have two accounts with Enterprise and Edward has one additional account with Enterprise. All three accounts are subject to the Receiver's Proposed Plan.

20.     Disposing of this action without allowing Edward and Anna to intervene will impeded Edward and Anna's ability to protect their interests. Edward and Anna's objection is primarily to the allocation methodology proposed by the Receiver. The Receiver, however, will not entertain any objections to the allocation methodology. The Proposed Plan states that "[n]o objection to the allocation methodology will be considered." *Proposed Plan, p. 27.* Thus, the procedures put in place by the Receiver to hear objections to the Proposed Plan impede Edward and Anna's ability to object to the aspects of the Proposed Plan that negatively impact their rights.

21.     Cases denying intervention tend to focus on the ability of the proposed intervener to make his objection through the process established by the receiver. *See, e.g., S.E.C. v. Kings Real Estate Inv. Trust,* 222 F.R.D. 660, 668 (D. Kan. 2004) (denying leave to intervene as a mater of right in an S.E.C. enforcement action on the ground that the movant would be able to present his claim under the procedure established by the receiver). Such cases are not dispositive of this situation due to the limits on the process established by the receiver to entertain objections. As that process is completely inadequate, Edward and Anna must be given leave to intervene.

22.     The existing parties to the suit do not adequately represent the interests of Edward and Anna. The Enterprise Defendants are hostile to Edward and Anna, as they are accused of wrongdoing that may cause Edward and Anna to suffer substantial losses. The Receiver has proposed a plan in which Edward and Anna will not recover all of their assets, or even their pro-rata share of their assets. Thus far, the SEC has taken no action to prevent the approval of this Proposed Plan. The SEC's primary purpose is to enforce securities laws. The Receiver must try to maximize asses for the entire estate. Neither represents the interests of Edward and Anna. *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 457, 467 (S.D.N.Y. 2000) ("Like the Receiver, the SEC's broader mission may well mean that it will take positions hostile to those of individual investors"). Thus, it is essential that Edward and Anna be allowed to intervene in this litigation in order to protect their interests.

23.     Intervention by Edward and Anna will not unduly delay or prejudice any other parties' rights. If this Court grants Edward and Anna's motion to intervene and ultimately agrees with the objections to the Proposed Plan raised by Edward and Anna, this Court can modify the Proposed Plan at the hearing that is already set for September 23, 2008.

### In the Alternative, Edward and Anna Have Should Be Granted Leave to Intervene Pursuant to F.R.C.P. 23(b)(1)(B)

24.     In the alternative, Edward and Anna should be permitted to intervene pursuant to F.R.C.P. 24(b)(1)(B).

25.     Edward and Anna's claims herein share common questions of law and fact with those being adjudicated in this action. As discussed above, Edward and Anna have two accounts with Enterprise and Edward has one additional account with Enterprise. All three accounts are subject to the Receiver's Proposed Plan. *Kings Real Estate Inv.*, 222 F.R.D. at 671-2 (granting leave to intervene where common questions of law and fact exist).

26.  As discussed above, intervention by Edward and Anna will not unduly delay or prejudice any other parties' rights.

Wherefore, for the reasons discussed above, this Court should grant Edward R. Hayes and Anna Hayes leave to intervene and to file their Objections to Proposed Plan.

                                      Edward R. Hayes and Anna Hayes

                  By:   /s/Andrew N. Plasz
                         Andrew N. Plasz, One of their Attorneys

Dated: August 27, 2008

Mr. Andrew N. Plasz, No. 6270442
Crowley Barrett & Karaba, Ltd.
20 South Clark Street
Suite 2310
Chicago, Illinois 60603
Phone: (312) 726-2468
Fax: (312) 726-2741

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that true and correct copies of the above and foregoing *Motion to Intervene* were served upon {see attached service list} by:

|     |     |
| --- | --- |
| _____ | Messenger; |
| _____ | Over-night express mail; |
| _____ | First Class U.S. mail (by placing copies in an envelope addressed to them and mailed in the United States mailbox located at 20 S. Clark Street, Chicago, Illinois 60603); |
| _____ | U.S. certified, return receipt requested; |
| _____ | Facsimile transmission (to the fax number listed above); |
| X | Electronic transmission through the CM/ECF system. |

on this day: August 27, 2008 at or before the hour of 5:00 p.m.

                                            /s/ Andrew N. Plasz
                                            Andrew N. Plasz

G:\CLIENTS\HAYES, EDWARD R. (2849)\ENTERPRISE DISPUTE (1)\MOTION TO INTERVENE.DOC

## SERVICE LIST

| | | | |
|---|---|---|---|
| Matthew Paul Barrette<br>Sullivan Hincks & Conway<br>120 West 22nd Street<br>Suite 100<br>Oak Brook, IL 60523<br>(630) 573-5021<br>mattbarrette@shlawfirm.com | Allison Marie Fakhoury<br>Securities & Exchange Commission<br>175 West Jackson Street<br>Suite 900<br>Chicago, IL 60604-2601<br>(312) 353-7390<br>fakhourya@sec.gov | Shermin Kruse<br>Barack, Ferrazzano, Kirschbaum, Perlman & Nagelberg<br>333 West Wacker Drive<br>Suite 2700<br>Chicago, IL 60606<br>(312) 984-3100<br>shermin.kruse@bfkpn.com | Pravin B. Rao<br>Perkins Coie LLP<br>131 S. Dearborn St.<br>Suite 1700<br>Chicago, IL 60603<br>(312) 324-8592<br>prao@perkinscoie.com |
| Patrick W. Blegen<br>Blegen & Garvey<br>53 West Jackson Boulevard<br>Suite 1437<br>Chicago, IL 60604<br>(312)957-0100<br>pblegen@blegenlaw.com | Nicholas A Gowen<br>Schopf & Weiss LLP<br>One South Wacker Drive<br>28th Floor<br>Chicago, IL 60606<br>(312) 701-9300<br>gowen@sw.com | Steven Justin Levine<br>Securities & Exchange Commission<br>175 West Jackson Street<br>Suite 900<br>Chicago, IL 60604-2601<br>(312) 886-1774<br>levines@sec.gov | Ray G. Rezner<br>Barack Ferrazzano Kirschbaum & Nagelberg LLP<br>200 West Madison Street<br>Suite 3900<br>Chicago, IL 60606<br>(312) 984-3100<br>ray.rezner@bfkn.com |
| Christopher Michael Burky<br>Neal, Gerber & Eisenberg<br>Two North LaSalle Street<br>Suite 2200<br>Chicago, IL 60602<br>(312) 269-8000<br>cburky@ngelaw.com | Michael Z. Gurland<br>Neal, Gerber & Eisenberg<br>Two North LaSalle Street<br>Suite 2200<br>Chicago, IL 60602<br>(312) 269-8440<br>(312) 269-1747 (fax)<br>mgurland@ngelaw.com | Jose A. Lopez<br>Schopf & Weiss LLP<br>One South Wacker Drive<br>28th Floor<br>Chicago, IL 60606<br>(312) 701-9300<br>lopez@sw.com | |
| John J. Conway<br>Sullivan Hincks & Conway<br>120 West 22nd Street<br>Suite 100<br>Oak Brook, IL 60523<br>(630) 573-5021<br>johnconway@shlawfirm.com | Steven Lee Klawans<br>U.S. Securities & Exchange Commission (IL)<br>175 West Jackson Blvd.<br>Suite 900<br>Chicago, IL 60604<br>312 353 7390<br>klawanss@sec.gov | Amy Gibson Lum<br>Perkins Coie LLP<br>131 S. Dearborn St.<br>Suite 1700<br>Chicago, IL 60603<br>(312) 324-8662<br>alum@perkinscoie.com | |

G:\CLIENTS\HAYES, EDWARD R. (2849)\ENTERPRISE DISPUTE (1)\SERVICE LIST 08.26.08.DOC

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Securities and Exchange Commission, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 CV 1260 |
| | ) | |
| Enterprise Trust Company, John H. Lohmeier and Rebecca A. Townsend, | ) ) | Judge James B. Zagel |
| | ) | |
| Defendants. | ) | |

## OBJECTION TO PROPOSED PLAN

Interveners Edward R. Hayes ("Edward") and Anna Hayes ("Anna") (collectively "Hayes"), by one of their attorneys, Andrew N. Plasz of Crowley Barrett & Karaba, Ltd. state as follows for their objections to the Receiver's Proposed Plan for the Allocation of the Assets of Enterprise Trust Company ("Proposed Plan").

### Introduction

The Receiver's Proposed Plan has several flaws and is not equitable. The Proposed Plan is unfair to Edward and Anna for several reasons. First, the Proposed Plan denies due process to Edward and Anna because, under its terms, the Receiver will not entertain any objections to the distribution methodology. Second, the Proposed Plan proposes that Edward will receive only 65% of the value of certain securities held by Enterprise that were held in certificated form (account no. 7181). Securities held in certificated form are completely traceable. Edward should not be required to accepted a 35% "discount" to the value of these securities. Giving Edward less than 100% of the value of his certificated securities represents nothing less than "robbing Peter to pay Paul."

Third, the Receiver's Proposed Plan divides the account holders of Enterprise into several classes. Depending on what class an account falls into, the account holder may recover as much as 65% of the value of his account or as little as 25% of the value of his account. This plan of distribution is unusual. Generally a *pro rata* distribution is favored. Under the proposed plan, Edward and Anna will receive only 25% of the value of their accounts (accounts nos. 6228 and 7003). This is far less than their pro-rata share.

## Statement of Facts

Edward & Anna hold two accounts with Enterprise Trust Company ("Enterprise"), accounts nos. 6228 and 7003. Edward also holds an individual account with Enterprise, account no. 7181. Edward and Anna made several contributions to account no. 6228. Between October 30, 2006 and February 1, 2007 Edward and Anna contributed $624,588.84 to account no. 6228. Only one contribution was made to account no. 7003. On February 20, 2007 Edward and Anna contributed $54,062 to account no. 7003.

Edward's contributions to account no. 7181 consisted entirely of certificated shares of stock. Edward made all of the contributions to account no. 7181 on December 6, 2007. The market value at that time of the contributions was, on information and belief, $14,392.17.

The Securities and Exchange Commission ("SEC") subsequently determined that Enterprise had violated various securities laws. The SEC, as a result, filed this action against Enterprise and the individual defendants on March 3, 2008. On March 5, 2008 this Court appointed Phillip L. Stern, Esq. of Neal, Gerber & Eisenberg, LLP as Receiver for the assets of Enterprise ("Receiver"). The Receiver subsequently proposed a plain for the allocation of the assets of Enterprise ("Proposed Plan").

The following statement of facts is based upon allegations found in the complaint filed by the SEC in this matter and the Receiver's Proposed Plan. Enterprise operated a securities business. According to the SEC, Enterprise offered its customers two types of accounts: custodial accounts and managed accounts. The managed accounts were actively managed by Enterprise and trading decisions were made by Enterprise. Trades were not to be made on assets in the custodial accounts without client approval. *Complaint, ¶¶26, 27, 28.* The Receiver contends that Enterprise commingled all of its clients assets in omnibus accounts in its name. The Receiver further contends that assets of the custodial clients were pledged as collateral in margin accounts to facilitate trading on behalf of customers with managed accounts. *Proposed Plan, p. 2.*

The Receiver has concluded that "Enterprise's records did not accurately reflect either the value of specific securities or the proper distribution of the securities among client accounts." *Proposed Plan, p. 18.* The receiver also determined that "it would be cost prohibitive to determine with any precision all of the transactions that should have been reflected in each client account." *Proposed Plan, p. 18.* As a result, "the Receiver limited the scope * * * to an analysis of each client's contributions and withdrawals." *Proposed Plan, p. 18.*

The receiver elected not to distribute assets on a pro-rata basis. Rather, each client of Enterprise was assigned to a category of accounts that are to receive different percentages of their contributions. These percentages are as follows:

| Type of Account | Percentage of Net Contribution to be Returned by Receiver under the Proposed Plan |
| --- | --- |
| Custodial | 65% |
| Actively Managed by Lohmeier | 25% |
| Actively Managed by Lohmeier (no short selling/opened in 2008) | 55% |
| Actively Managed by Steckler | 55% |
| Actively Managed by Disraeli | 55% |

3

As the table above demonstrates, the Receiver is giving preferential treatment to custodial accounts. Accounts managed by Lohmeier (other than those in which no short selling occurred and those opened in 2008) receive very harsh treatment. Those account holders (including Edward and Anna), under the Receiver's plan, will recover only 25% of their contributions.

## Objections

I. **THE PROPOSED PLAN VIOLATES EDWARD AND ANNA'S DUE PROCESS RIGHTS BECAUSE IT DOES NOT AFFORD THEM ANY OPPORTUNITY TO OBJECT TO THE DISTRIBUTION METHODOLOGY OR TO TAKE DISCOVERY**

While the Receiver has established a process for entertaining objections to the Proposed Plan, the Receiver is refusing to entertain any objections to the distribution methodology. "Summary proceedings are inappropriate when parties would be deprived of a full and fair opportunity to present their claims and defenses." *S.E.C. v. Elliott*, 953 F.2d 1560, 1567 (11th Cir. 1992). As Edward and Anna contend that the distribution methodology is unfair, this aspect of the Proposed Plan deprives them of a full and fair opportunity to present their claims and thus violates Edward and Anna's due process rights. Moreover, the Proposed Plan does not give Edward and Anna any opportunity to take discovery. The opportunity to take discovery is an important component of protecting Edward and Anna's due process rights in a summary proceeding. *Elliott*, 953 F.2d at 1567.

II. **EDWARD SHOULD RECEIVE HIS CERTIFICATED SECURITIES, OR 100% OF THEIR VALUE**

Edward's contributions to account no 7181 consisted entirely of certificated securities. To the best of Edward's knowledge, the certificates were still in the possession of Enterprise at the time the Receiver was appointed and the securities had not been converted to book entries.

4

In this situation, where Edward's assets are identifiable, he should receive his assets or 100% their value.

This result is mandated by the rule stated in Section 213 of the Restatement (First) of Restitution. Section 213 states as follows:

> **§213.** Mingling of Money of Several Persons
>
> (1) Except as stated in Subsection (2), where a person wrongfully mingles money of two or more persons, each of them is entitled to share in the mingled fund or in property acquired with the fund, in such proportion as his money bore to the whole amount of the fund.
>
> (2) Where the wrongdoer has effectively separated the money of one of the claimants, that claimant is entitled to, and only to, his own money or its product.

The facts of this case fall squarely within the rule of Section 213(2). The wrongdoer (Enterprise) had "effectively separated" Edward's securities in account no. 7181 because those securities were certificated.

Moreover, even if the securities deposited into account no. 7181 had been converted to book entries but not sold, they remain entirely traceable. Under this scenario, Edward should receive 100% of the value of the securities he deposited into account no. 7181.

III. **EDWARD AND ANNA HAVE DONE NOTHING WRONG AND SHOULD NOT BE PENALIZED BY RECEIVING ONLY 25% OF THE VALUE OF THEIR ACCOUNT**

There is no evidence, or even suggestion, in the Proposed Plan that Edward and Anna have done anything wrong. Edward and Anna simply had the misfortune to have invested substantial assets with Enterprise. Edward and Anna are victims of Enterprise - as much so as the custodial customers of Enterprise. Unfortunately, however, the Proposed Plan does not treat Edward and Anna as victims. Rather, the Proposed Plan seeks to punish Edward and Anna

because two of their accounts were actively managed by Lohmeier; were opened prior to 2008; and engaged in short sale transactions. None of these attributes merit such treatment.

The Receiver is apparently trying to make the victims of the theft whole. The Receiver states in his proposed plan that "over $8 million of custodial assets were actually liquidated and used to satisfy a debit balance that resulted from speculative trading" in the managed accounts. *Proposed Plan, p. 23.* As a result the Receiver made a determination "that custodial accounts should receive a greater percentage of remaining assets than most actively managed accounts." *Proposed Plan, p. 23.* The Proposed Plan then proposes to return to owners of custodial accounts 65% of their net contributions. Owners of managed accounts would receive less. The owners of accounts actively managed by Mr. Lohmeier that were opened before 2008 and engaged in short sale transactions (such as Edward and Anna) would only receive 25% of their net contributions.

The Proposed Plan is unfair. It is fair to give some preference to the Custodial Accounts because those accounts suffered losses due to theft. However, it is not fair to base distributions on net contributions (because trading gains and losses cannot be tracked) and to simultaneously punish certain categories of accounts for *presumed* trading losses. Yet this is precisely what the Receiver proposes to do.

The Receiver goes to great lengths to point out the difficulty of determining the trading gains and losses suffered by each client. The Receiver notes that "Enterprise lacked sufficient internal controls to insure the reliability of its accounting records" and that "Enterprise employees had the ability to change or modify historical entries" in Enterprise's records. *Proposed Plan, p. 14.* Enterprise also had significant conflicts of interest; "never commissioned an independent audit of its financial statements"; "withheld details of trading activity" from its

clients; apparently destroyed evidence; and its personnel, in many cases, failed to cooperate with the Receiver. *Proposed Plan, pp. 15-17.* The Receiver also contends that "Enterprise's records did not accurately reflect either the value of specific securities or the proper distribution of the securities among client accounts." The Receiver thus determined that "it would be cost prohibitive to determine with any precision all of the transactions that should have been reflected in each client account." *Proposed Plan, p. 18.*

Thus, the Receiver decided to gauge each accounts value solely through the lenses of net contributions. In determining the value of each client's account *trading losses and gains are ignored. Proposed Plan, pp. 18-20.* Yet, the Receiver proposes to penalize Edward and Anna for trading losses that the Receiver cannot demonstrate occurred.

IV. **EDWARD AND ANNA'S PROPOSED PLAN: THE RECEIVER SHOULD RETURN THE 8 MILLION DOLLARS IN STOLEN FUNDS TO THE CUSTODIAL ACCOUNTS; RETURN CERTIFICATED SECURITIES TO THEIR OWNERS AND THEN DISTRIBUTE THE ASSETS OF ENTERPRISE THAT CANNOT BE TRACED PRO RATA**

Edward and Anna propose the following alternative plan. The plan has three steps. First, the Receiver should return all certificated securities to their owners. Second, the Receiver should reimburse the custodial accounts pro rata for the 8 million dollars that were stolen from the remaining assets of Enterprise. Third, all assets of Enterprise remaining after steps one and two have been completed should be distributed pro rata.

This proposed plan corrects the unfair aspects of the Receiver's Proposed Plan (which are discussed above). While correcting the unfair aspects of the Proposed Plan it also provides that the custodial accounts will receive full compensation for the stolen assets. After returning certificated securities and stolen assets to their rightful owners, it distributes the remaining assets pro rata. A pro rata distribution of the remaining assets is fair because there is insufficient data

to document the trading gains or losses in each account. Thus, the remaining assets are distributed based upon the net contributions to each account, which can be (and has been) documented by the Receiver.

V.  **THE RECEIVER SHOULD ACCOUNT FOR THE ASSETS OF ENTERPRISE**

At the very least, the Receiver should account for the assets of Enterprise. The Receiver contends that the trading losses and gains in the customer accounts cannot be documented without a significant effort. The Receiver has not, however, provided any documentation, other than the statements in the Proposed Plan, to back up this contention. As discussed above, the Proposed Plan does not give Edward and Anna any opportunity to take discovery. The opportunity to take discovery is an important component of protecting Edward and Anna's due process rights in a summary proceeding. *Elliott*, 953 F.2d at 1567.

VI. **THE RECEIVER'S REQUEST TO WITHHOLD 1 MILLION DOLLARS IN ASSETS TO PAY LEGAL FEES AND OTHER EXPENSES IS UNREASONABLE**

The Receiver's request to withhold $1 million in assets of Enterprise to pay legal fees and other expenses is unreasonable. One million dollars is a significant amount of money relative to the assets of Enterprise. In addition, the Receiver has not disclosed any detailed plan or explanation of why such a large sum is needed. The Receiver has only given a cursory explanation. *Proposed Plan, p. 25.*

                                        Edward R. Hayes and Anna Hayes

                              By:     _____
                                      Andrew N. Plasz, One of their Attorneys

Dated: _____

Mr. Andrew N. Plasz, No. 6270442
Crowley Barrett & Karaba, Ltd.
20 South Clark Street
Suite 2310
Chicago, Illinois 60603
Phone: (312) 726-2468
Fax: (312) 726-2741

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that true and correct copies of the above and foregoing *Objection to Proposed Plan* were served upon {see attached service list} by:

|   |   |
|---|---|
| _____ | Messenger; |
| _____ | Over-night express mail; |
| _____ | First Class U.S. mail (by placing copies in an envelope addressed to them and mailed in the United States mailbox located at 20 S. Clark Street, Chicago, Illinois 60603); |
| _____ | U.S. certified, return receipt requested; |
| _____ | Facsimile transmission (to the fax number listed above); |
| X | Electronic transmission through the CM/ECF system; |

on this day: _____ at or before the hour of 5:00 p.m.

By: _____
       Andrew N. Plasz

G:\CLIENTS\HAYES, EDWARD R. (2849)\ENTERPRISE DISPUTE (1)\OBJECTION TO PROPOSED PLAN.DOC