IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                     Plaintiff,<br><br>v.<br><br>ENTERPRISE TRUST COMPANY,<br>JOHN H. LOHMEIER, and<br>REBECCA A. TOWNSEND,<br>                     Defendants. | No. 08 CV 1260<br><br>Judge James B. Zagel |

## **RECEIVER'S RESPONSE TO THE OBJECTIONS OF CERTAIN ENTERPRISE CLIENTS REGARDING THE PROPOSED SETTLEMENT WITH OPTIONSXPRESS**

**I.    BACKGROUND**

Phillip L. Stern, as Receiver for Enterprise Trust Company ("Enterprise") hereby provides the Court with the objections that have been made by Enterprise clients to the Proposed Settlement Agreement and Special Release with optionsXpress dated January 20, 2009 (the "Settlement"), submits the Receiver's responses thereto (the "Responses") and requests approval of the proposed Settlement.

    **A.    Background.**

On January 20, 2009, the Receiver entered into the proposed Settlement with optionsXpress, in which optionsXpress agreed to pay to the Enterprise estate One Million Three Hundred Thousand Dollars ($1,300,000), which represents approximately 68% of the net trading loss at optionsXpress, in exchange for and subsequent to entry of a Bar Order resolving all related claims involving the Enterprise accounts held at optionsXpress. A copy of the proposed

Settlement is attached as Exhibit A. A copy of the proposed Bar Order is attached as Exhibit B.

On January 20, 2009, the Receiver moved for an order approving the proposed Settlement.

On January 29, 2009, the Court issued an Order directing the Receiver to notify the Enterprise clients about the proposed Settlement and Bar Order, and establishing a procedure to handle any objections to same.

As directed by the Court, on January 29, 2009, the Receiver sent to each Enterprise client or their representative by first class United States mail a letter explaining the proposed Settlement and Bar Order (Exhibit C). As explained in the mailings to the clients, objections to the Settlement were required to be submitted in writing to the Receiver and postmarked no later than March 13, 2009. The Receiver received three objections from the six hundred plus Enterprise customers: (1) the objection of Jimmy R. Gibson received March 2, 2009 (Exhibit D); (2) the objections of David, Bonnie and Jenny Garfield dated February 14, 2009 (Exhibit E); and an objection made by Lyle W. Cook, counsel for Thelma Steckler, Bernard Hofmann, Constance Hofmann, Kenneth M. Brindley and Deborah G. Brindley (hereinafter, the "Cook Objection"). (Exhibit F). The Receiver believes that the objections individually or taken as a group do not warrant modification or rejection of the proposed Settlement.

The Gibson and Garfield objections do not provide either a legal basis to challenge the proposed Settlement, nor do they detail any facts or raise any issues that undermine the Receiver's opinion that the Settlement is fair and in the interest of all of Enterprise's clients. The Cook Objection raises certain questions that are addressed below, but that do not ultimately support a claim that the Enterprise clients would be better served by rejecting the Settlement.

The Receiver now asks the Court to enter an Order approving the Settlement.

## II. LEGAL DISCUSSION

It is well recognized that "the district court has broad power and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Elliot,* 953 F.2d 1560, 1566-67 (11th Cir. 1992). *See also, SEC v. Basic Energy & Affiliated Resources, Inc.,* 273 F.3d 657, 670-71 (6th Cir. 2001); *SEC v. Hardy,* 803 F.2d 1034, 1037-39 (9th Cir. 1986) ("[I]t is a recognized principal of law that the district court has broad power and wide discretion to determine the appropriate relief in an equity receivership."). See also, *SEC v. Enterprise Trust Company,* Nos. 08-3798 and 08-3852 (7th Cir., March 18, 2009).

A district court also has broad powers to determine appropriate procedures to be followed in the administration of the estate. *Hardy,* 803 F.2d at 1040 ("The use of summary proceedings to determine appropriate relief in equity receiverships, as opposed to plenary proceedings, . . . is within the jurisdictional authority of a district court."). Such procedures "avoid formalities that would slow down the resolution of disputes. This promotes judicial efficiency and reduces litigation costs to the receivership." *SEC v. Wenke,* 783 F.2d 829, 837 n.9 (9th Cir. 1986). Indeed, the Seventh Circuit recently upheld the summary procedures used in this case with regard to the approval of the Plan of Distribution.

With regard to the proposed Settlement, and as previously detailed in the Memorandum in Support of Receiver's Motion for Order Approving Proposed Settlement and for Ancillary Orders (Docket 209), courts uniformly emphasize that federal law and public policy favor settlement of litigation. *Munford, Inc., v. Munford Inc.,* 97 F.3d 449, 455 (11th Cir. 1996); *Harmelin v. Man Financial Inc.*, Nos. 06-1944, 05-2973, 2007 WL 4571021, *5 (E.D. Pa. Dec. 28, 2007); *Commodity Futures Trading Commission,* 2007 WL 2139399 at *2. That is equally true here, where the victims of Enterprise's scheme have been substantially harmed and the

Receivership Estate would be in a position to make interim distributions now, if a settlement is reached.

Consistent with this policy, entry of a bar order that is required by a proposed settlement agreement is within a court's authority and discretion. *Gordon,* 2008 WL 1805787 at *14; *Gordon v. Dadante*, No. 05 CV 2726, 2008 WL 4625157, *5 (N.D. Ohio Oct. 16, 2008); *In re VMS Partnership Securities Litigation,* No. 90-2412, 1993 WL 181879, *2 (N.D. Ill. May 26, 1993) (J. Zagel). Bar orders are commonly used to facilitate settlement by allowing parties to control risk, and it is common for courts to enter bar orders precluding parties from proceeding with claims pending against a defendant in other forums. *Niven v. United Airlines, Inc*., No. 08-832, 2006 WL 897904, *3 (N.D. Ill. April 5, 2006). Because the Settlement is only possible with the Bar Order, and because the prerequisite of the Bar Order has enabled the Receiver to achieve a significant settlement from optionsXpress (in light of the facts that the losses attributable to trading during the period of time when optionsXpress served as Enterprise's broker-dealer were approximately $1.9 million), the Bar Order is in the interests of the estate. Under similar circumstances, Courts have approved such Orders. *See, e.g., Harmelin v. Man Financial, Inc.,* 2007 WL 4571021 (E.D. Pa., Dec. 2007) (where settlement is in the interest of the receivership estate, federal law and public policy favors entry of a bar order to facilitate such settlement).

## III. THE OBJECTIONS AND THE RECEIVER'S RESPONSES.

The objections made by Mr. Gibson and the Garfields (Exhibits D and E) do not raise any challenge to the legality of the proposed Settlement nor do they provide any facts indicating that the Receiver's cost benefit analysis is incorrect. The objection filed by Mr. Gibson in the form of letters to the Receiver, the U.S. Securities and Exchange Commission, the Department of

Justice, the Internal Revenue Service and the White House Administrative Assistant for President Obama (Exhibit D) is primarily a personal attack on the Receivership. Stripped of invective, the objection boils down to a complaint that a settlement for 66 cents on the dollar is insufficient, and that optionsXpress should be required to pay its entire potential liability, not just $1,300,000. The objection, however, does not take into account the enormous expense that the receivership would have to incur to attempt to recover the full potential liability by way of judgment, nor does it recognize the potential defenses asserted by optionsXpress that could arguably stand in the way of a recovery.

The single sentence objection filed by the Garfields (Exhibit E) similarly does not provide any substance that could inform a decision by the Court as to the merits of the Settlement. The objection is that optionsXpress should have greater liability by virtue of the risky margin positions that were placed in Enterprise's name. optionsXpress, however, had the Enterprise account for a relatively short period of time, and the bulk of losses that Enterprise incurred resulted from trades that were placed at other broker dealers.

During the time when optionXpress held the account, net trading losses resulting from positions placed through optionsXpress and sold at optionsXpress totalled approximately $1,900,000. The settlement with optionsXpress represents a recovery of approximately 68% of the total losses at optionsXpress. Given the risks associated with litigation of the claims against optionXpress and the costs that would be incurred in pursuing such claims, the settlement represents a significant recovery and cost savings for the receivership estate.

The Cook Objection essentially consists of the following three arguments: (1) the Receiver does not have "any grant of authority or permission" from the individual investors, nor any duty of loyalty to them, and should not be allowed to bind the investors by way of a Bar Order when there appears to be a conflict between the Receiver's interests in protecting Enterprise as opposed to the individual investors; (2) the exposure of optionsXpress possibly has been underestimated, and therefore, the settlement is too low, especially if investors could succeed on legal theories that would allow for consequential or punitive damages; (3) class action is preferable given that certain Enterprise customers "would prefer to act on their own."

As to the Receiver's authority and obligations, the Receiver is acting pursuant to the September 23, 2008 Order of this Court which "authorized [the Receiver] to bring such lawsuits or other actions, in this proceeding or elsewhere, on behalf of Enterprise and its clients, against others who may have engaged in unlawful conduct or may otherwise be liable to Enterprise or to Enterprise's clients." (Docket 158 at 3). While the Receiver stands in the shoes of Enterprise, the Receiver's "loyalty" is to the former customers of Enterprise. The Receiver has used his power, at the Court's direction, to marshal Enterprise's assets and increase Enterprise's estate for the benefit of all Enterprise customers. Indeed, after taking control of Enterprise, the Receiver ceased operations, denied certain creditor claims so as to preserve available assets for the investors, and pursued settlement and litigation for the sole benefit of Enterprise's investors, *not for the benefit of the company*. In evaluating the proposed Settlement, the Receiver was not motivated by optionsXpress's claim that it could seek indemnity from Enterprise. In fact, the Receiver gave that argument no weight in assessing the reasonableness of the offer put forward by optionsXpress.

With respect to the damages calculation, the exposure of optionsXpress is based solely on losses that resulted from positions which were put on and liquidated at optionsXpress. Most of the losses suffered by Enterprise occurred prior to, or were the result of trading and positions put on before, the transfer of the account to optionsXpress. As to the loss amount at optionsXpress, the Receiver relied on an accounting prepared by the SEC corroborated by information provided by optionsXpress.[1] The SEC reviewed every trade placed at optionsXpress, and calculated the losses resulting from all purchases and related sales while the account was at optionsXpress. Thus, the damage calculation was the result of an independent review by the government, and not from analyses provided by optionsXpress. As discussed above, given that the Settlement represents a significant portion of the total losses at optionXpress, the Receiver believes the Settlement is appropriate especially given that full blown litigation would result in significant costs to the estate and would substantially reduce the benefit of any recovery given that the amount of losses at optionsXpress.

The Receiver does not believe that either individual actions or a class action would be superior to the proposed Settlement. It is improbable that either type of action could result in a greater benefit to Enterprise customers as a whole. The proposed Settlement was achieved with minimal cost to the Receivership estate. Either a class action or hundreds of individual actions would be substantially more expensive and would delay any possible recovery for years. Moreover, based on the number of objections received (three), it is apparent that Enterprise clients prefer the Settlement over class or individual actions.

---

[1] Attached hereto as Exhibit G is the Declaration of Thomas E.Stern, the Chief Financial Officer of optionsXpress, dated March 26, 2009, along with Exhibits thereto, detailing losses at optionsXpress.

Moreover, the self-serving motivations of Mr. Cook and two of his objectors (Kenneth and Deborah Brindley) are made manifest by the fact that they filed a complaint in the United States District Court for the Eastern District of California against, Legent Clearing LLC, optionsXpress, Inc, Interactive Brokers, LLC, U.S. Bank, Enterprise Trust Company, John H. Lohmeier, and Rebecca A. Townsend the day before submitting their objection to the settlement. A copy of the complaint is attached hereto as Exhibit H.[2]

The Brindley's entrusted approximately $115,427 in mutual funds to Enterprise. Those shares were pledged as collateral at optionsXpress and approximately $94,749 of the Brindley's assets were among the securities liquidated by optionsXpress to satisfy Enterprise's debit balance. The Brindley's possible recovery, however, is substantially less. For purposes of the upcoming Enterprise distribution, the Brindley's account has been classified as custodial putting them in the class that will recover the most from Enterprise. While the exact amount of their recovery is not yet known due to the volatility of the market, it will substantially reduce their losses. With respect to Mr. Cook's other clients, we have not seen any evidence that any of their assets were liquidated by optionsXpress to satisfy the Enterprise debit balance. Thus, the claims Mr. Cook's clients could arguably pursue against optionsXpress are *de minimis* and do not warrant overturning the proposed Settlement. Finally, the proposed bar order would not prevent Mr. Cook and his clients from pursuing claims against other parties.

---

[2] The Receiver has not yet been served with the Brindley Complaint. After service is made, the Receiver intends to ask this Court for an Order Staying the Brindley action.

## CONCLUSION

Based on the foregoing, the Receiver respectfully requests that the Court approve the Settlement and enter the Bar Order consistent with the recommendation of the Receiver. The Receiver is available to answer any additional questions or provide any additional information the Court may require.

Date:  March 26, 2009                                         Respectfully submitted,


                                                              /s/ Michael Z. Gurland
                                                              Counsel to the Receiver Phillip L. Stern

Michael Z. Gurland, Esq.
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 2200
Chicago, IL  60602-3801
(312) 269-8000

# CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on the 26th day of March, 2009, he electronically filed Receiver's Response to the Objections of Certain Enterprise Clients Regarding the Proposed Settlement with optionsXpress, using the CM/ECF system which sent notification to the following and all counsel of record:

| | |
|---|---|
| Steven J. Levine | levines@sec.gov |
| Steven L. Klawans | klawansse@sec.gov |
| Allison M. Fakhoury | fakhoury@sec.gov |
| Pravin Rao | prao@perkinscoie.com |
| Amy Lum | alum@perkinscoie.com |
| Patrick William Blegen | pblegen@blegenlaw.com |

With a copy of the foregoing sent via U.S. Mail, postage prepaid, on March 26, 2009 to the following:

Mr. Jimmy R. Gibson
P.O. Box 1029
Riverside, Texas 77367

David Garfield, M.D.
Bonnie Garfield, PhD
Jenny Garfield, BA
600 Burton Avenue
Highland Park, Illinois 60035

Lyle W. Cook
Kershaw Cutter & Ratinoff LLP
401 Watt Avenue
Sacramento, California 95864

/s/ Michael Z. Gurland
Counsel to the Receiver Phillip L. Stern

NGEDOCS: 1613023.1